IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


JAMES MESHACH LOMAX, #280316        *
        Plaintiff,
        v.                          *        CIVIL ACTION NO. DKC-12-1559

STEPHEN MACK, HEARING OFFICER       *
SGT. WEDLOCK
BOBBY B. SHEARIN, WARDEN             *
DEPUTY DIRECTOR ROBIN WOOLFORD
In their official and individual capacities        *
        Defendants.
                          ***

**MEMORANDUM OPINION**

**Procedural History**

On May 24, 2012, James Lomax ("Lomax"), an inmate housed at the North Branch Correctional Institution ("NBCI") maximum security facility in Cumberland, Maryland, filed a Complaint claiming that on August 25, 2011, a gang fight occurred in the "C" yard at NBCI.  He contends that because of his proximity to the knife found in the yard he was "arrested" and placed on administrative segregation.  Lomax complains that the following day he was charged with possession of a weapon and served with an infraction.  (ECF No. 1).  He alleges that he requested the surveillance camera as his "witness" and an inmate as his representative.  Lomax states that 35 days later, on September 29, 2011, he had an adjustment hearing before Hearing Officer ("H.O.") Mack.  He contends that although he again requested the surveillance camera as his witness, Sgt. Wedlock informed Mack that there was no surveillance tape.  Lomax complains that:  he did not receive a "rule violation charge," did not waive his right to the witness (camera), and that the holding of the hearing violated institutional directives because it was not held before an H.O. within seven days as required by Division of Correction Directive 105-5.  He claims that he voiced those objections, but Mack nonetheless found him guilty of possession of a weapon and sanctioned him to

a 75-day disciplinary segregation term and the indefinite loss of visits.[1]  Lomax also claims that

Defendant Woolford, the Deputy Director of the Inmate Grievance Office ("IGO"),  informed him

by letter that he file all relevant documents within 30 days of January 3, 2012, but he did not receive

the letter until February 13, 2012, well after the deadline for filing the materials.  He contends that

this action barred him from being heard before an administrative law judge.  (ECF No. 1).  He

accuses Defendants of violating his due process right and he seeks compensatory damages.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary

Judgment.  Lomax has filed an Opposition response and Defendants have filed a Reply.  (ECF Nos.

18, 20, & 21).  The papers have been examined and Defendants' Motion may be determined without

oral hearing.  Local Rule 105.6  (D. Md. 2011).  For the following reasons Defendants' dispositive

paper, treated as a motion for summary judgment, shall be granted.

**Standard of Review**

Under Fed.R.Civ.P. 56(a):

> A party may move for summary judgment, identifying each claim or defense-or the
> part of each claim or defense-on which summary judgment is sought.  The court shall
> grant summary judgment if the movant shows that there is no genuine dispute as to
> any material fact and the movant is entitled to judgment as a matter of law.  The
> court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure

when there is no genuine issue as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249,

(1986) the Supreme Court explained that in considering a motion for summary judgment, the

"judge's function is not himself to weigh the evidence and determine the truth of the matter but to

---

[1]        Lomax seemingly claims that he was sanctioned with the indefinite visitation loss in absentia.
(ECF No. 1)

determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id* . at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E .O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves–Humpreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct

credits, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564

(1974). These include advance written notice of the charges against him, a hearing, the right to call

witnesses and present evidence when doing so is not inconsistent with institutional safety and

correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process

is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent,*

*Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

In *Sandin v. Conner*, 515 U.S. 472, 480-84 (1995), the United States Supreme Court

reiterated that the *Wolff* due process safeguards must be provided when the challenged disciplinary

proceeding results in a loss of good time credits. *See also O'Bar v. Pinion,* 953 F.2d 74-83-84 (4th

Cir. 1991) (state-given right to good time credits creates a protected liberty interest).

**Analysis**

Defendants present the following facts: On August 25, 2011, Lomax was cited for violating

prison rules. (ECF No. 18 at Ex. 1). On September 29, 2011, he appeared before Mack for an

adjustment hearing, with Sgt. Wedlock present. Lomax was found guilty of violating Rule 105[2] and

sanctioned with 75 days of segregation and the indefinite loss of visits, but was not sanctioned with

the loss of good conduct credits. (*Id*. at Ex. 2). Warden Shearin affirmed the adjustment decision

and sanctions on October 28, 2011. Lomax filed a grievance on November 4, 2012, and Woolford

sent a letter to Lomax dated January 3, 2012, requesting additional documentation. Woolford

maintains that he did not delay the mailing of the letter to Lomax and on January 5, 2012, a timely

letter from Lomax was received by the IGO containing requested documents. (*Id.* at Exs. 3 & 4).

The grievance was dismissed on July 11, 2012, with a finding that Lomax had failed to show that he

---

[2]     Lomax was charged and found guilty of a Category I rule violation under Division of
Correction Directive 105-4 at Appendix 1, p. 2 (possession of a weapon or any article modified into a
weapon; [or] unauthorized possession of any implement, article, or tool that reasonably could be modified
into or used as a weapon).

suffered prejudice from any alleged procedural error in the adjustment process. (*Id*.).

In his Opposition, Lomax restates the claims raised in his original Complaint and contends that the H.O. and Warden went outside their official capacity to arbitrarily sanction him and to uphold those sanctions. He further contends that the restrictions placed on his visitation were made without penological justification and he "has a constitutional right to receive visits from family and friends." (ECF No. 20). In their Reply, Defendants argue that Lomax's visitation has not been suspended permanently under the regulations. They assert that a mandatory sanction of indefinite suspension is provided for in specific enumerated offenses such as those for which Lomax was convicted and an inmate whose visiting privileges are indefinitely suspended may petition for reinstatement of the privileges after 18 months from the date the sanction was imposed.[3] (ECF No. 21 at Ex. 2). Defendants argue further that at no point were Lomax's visitation, mail or telephone privileges permanently lost and he continues to be able to communicate with others. (*Id.*).

Lomax was not sanctioned with the loss of good conduct credits at his September 2011 adjustment hearing. Therefore, no liberty interest is implicated in the adjustment process. While Lomax does complain about his confinement on segregation, he has not alleged any particularized personal harm/injury or demonstrated that the conditions of confinement on NBCI segregation posed an atypical and significant hardship on his day-to-day prison life. *See Sandin*, 515 U.S. at 484; *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Further, the court finds that "indefinite" restrictions placed on Lomax's visits do not violate his constitutional rights. *See Overton v. Bazzetta*, 539 U.S. 126, 133-134 (2003).[4] The adjustment

---

[3]     Defendants assert that Lomax had 38 findings of inmate rule violations prior to the August 2011 infraction. (ECF No. 21 at Ex. 1). Eight of those prior sanctions included a loss of visitation for rule violations enumerated in Division of Correction Directive 105-8. (*Id*.).

[4]     In *Overton*, the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. *Overton*, 539 U.S. at 137–38 (2003) (finding a two-year deprivation of

conviction that led to the September 2011 indefinite suspension of visitation is well documented as

noted herein, as is Lomax's disciplinary history. Curtailment of visitation, recreations, and property

privileges, which emphasizes the connection between an inmate's "choices and consequences," is

rationally related to providing a safer prison environment. *Overton*, 539 U.S. at 133. Lomax may

apply for reinstatement of the privilege when the 18-month period expires.[5] His visitation was not

permanently suspended. The action of NBCI personnel is not constitutionally violative as the

withdrawal of visitation privileges is a proper and "even necessary management technique to induce

compliance with the rules of inmate behavior, especially for high-security prisoners who have few

other privileges to lose." *Overton* at 134. Although the suspension of Plaintiff's visitation is

restrictive, his allegations do not present a claim of constitutional magnitude for which relief can be

granted.

Because Lomax has failed to demonstrate a serious deprivation or injury from the alleged

conditions of confinement, no constitutional deprivation has been established. A separate Order will

be entered granting Defendants' motion for summary judgment in regards to Lomax's September

2011 adjustment and sanction.

Date: January 15, 2013                          _____/s/_____
                                                DEBORAH K. CHASANOW
                                                United States District Judge

---

visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor
> does the regulation create inhumane prison conditions, deprive inmates of basic necessities,
> or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or
> deliberate indifference to the risk that it might occur. If the withdrawal of all visitation
> privilege were permanent or for a much longer period, or if it were applied in an arbitrary
> manner to a particular inmate, the case would present different consideration.

*Id.,* 539 U.S. at 137 (citations omitted).

    [5]    If Lomax's application for reinstatement of his visiting privileges is denied, he may file a
new complaint seeking review of the claim.